O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALFREDO SALAZAR, JR. | ) | NO. EDCV 07-00565-MAN |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on May 18, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). On June 18, 2007, the parties consented to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on January 25, 2008, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of benefits or, in the alternative, remanding the matter for a new hearing; and Defendant seeks an order affirming the Commissioner's decision. The

Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed applications for DIB and SSI on July 23, 2004. (Administrative Record ("A.R.") 53-57, 305-09.)  Plaintiff claims to have been disabled since July 22, 2002, due to mental disorders.  (A.R. 53, 61, 305.)  Plaintiff has past relevant work as a "mixer," "packer," and "welder/cleaner."  (A.R. 62, 69, 77.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.  (A.R. 35-36, 40-44, 310-11.)  On November 27, 2006, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge James S. Carletti ("ALJ").  (A.R. 312-33.)  On December 13, 2006, the ALJ denied Plaintiff's claim.  (A.R. 8-18.)  The Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision.  (A.R. 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his written decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2004, and that Plaintiff has not engaged in substantial gainful activity since July 22, 2002, the alleged onset date.  (A.R. 13.)  The ALJ determined that Plaintiff has the severe impairment of schizophrenia, paranoid type.  (A.R. 14.)  However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that

meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ further found that Plaintiff has the residual functional capacity ("RFC") to perform simple, repetitive tasks in a non-public environment, with minimal contact with co-workers or supervisors. (A.R. 14-17.) Based on this RFC assessment and the testimony of a vocational expert, the ALJ found that Plaintiff is capable of performing his past relevant work as a packer and palletizer, a mixer and packer, and a welder helper. (A.R. 17.) Accordingly, the ALJ concluded that Plaintiff is not disabled. (A.R. 17.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003)(citation omitted). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a

whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874. The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following four issues: (1) whether the ALJ properly considered the findings of Dr. H.N. Hurwitz, a state agency physician, regarding Plaintiff's limitations; (2) whether the ALJ properly considered law witness testimony, *i.e.*, a third party questionnaire submitted by Plaintiff's sister; (3) whether the

4

hypothetical question posed to the vocational expert was complete; and (4) whether the ALJ's determination that there are several jobs that can be performed by Plaintiff is consistent with Plaintiff's RFC.

**I.   The ALJ Did Not Commit Error In Connection With The State Agency Physician's Findings.**

On September 2, 2004, Dr. Hurwitz, a state agency psychiatrist, completed a Social Security Administration mental residual functional capacity assessment form for Plaintiff. (A.R. 187-89.) The first part of the form consists of 20 items, divided into four categories of mental activities (understanding and memory, sustained concentration and persistence, social interaction, and adaptation); as to these 20 items, the preparer is to check the appropriate box to indicate the degree of limitation found based on his or her review of the "evidence in file." (A.R. 187.) As to 15 of the items, Dr. Hurwitz checked the "Not Significantly Limited" box. (A.R. 187-88.) Dr. Hurwitz checked the "Moderately Limited" box for the following five items: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to make simple work-related decisions; the ability to interact appropriately with the general public; and the ability to set realistic goals or make plans independently of others. (*Id.*) On the third page of this form, Dr. Hurwitz was required to "[r]ecord . . . elaborations on the preceding capacities." (A.R. 189.) Despite that directive, Dr. Hurwitz made only the following cryptic notation: "PER 4/05[;] SEE MID___ [illegible word]." (*Id.*)

On the same date (September 2, 2004), Dr. Hurwitz provided the following "Narrative Mental Residual Functional Capacity" assessment for Plaintiff:

A.  Claimant has sufficient retained understanding and memory to perform simple repetitive work tasks.

B.  Claimant has adequate pace and persistence to sustain simple repetitive work tasks for a normal workday and workweek.

C.  CL [*sic*] can relate in a socially effective manner with coworkers and supervisors, but not with the public.

D.  CL [*sic*] can adapt to a variety of work setting situations and changes.

(A.R. 206.)

At the hearing before the ALJ, Dr. Sidney Bolter, a "board certified psychiatrist and neurologist" (A.R. 15), appeared and testified as a medical expert. (A.R. 322.) Based on his consideration of Plaintiff's testimony, his questioning of Plaintiff at the hearing, and his review of the evidence of record (A.R. 322-27), Dr. Bolter opined that: Plaintiff's concentration, persistence, and pace "might be as good as mild if he's in a fairly restricted environment such as a non public environment with minimal contacts with peers and supervisors"; and Plaintiff should be limited to simple, repetitive tasks "like one-two step tasks that do not require any really good memory and really don't call on excellent concentration because the task is repeating itself and it's pretty hard to make mistakes that way." (A.R. 328.)

6

In his decision, the ALJ noted Dr. Hurwitz's finding that Plaintiff does not meet or equal any Listing. (A.R. 14; *see also* A.R. 191.) The ALJ stated that he had given "great weight" to "the State Agency," *i.e.*, Dr. Hurwitz, as his opinion was consistent with the totality of the evidence. (A.R. 17.) The ALJ further found Dr. Bolter's opinion to be persuasive and adopted it. (*Id.*)

Under the Commissioner's regulations:

> Administrative law judges are not bound by any finding made by State agency medical or psychological consultants, or other program physicians or psychologists. However, State agency medical and psychological consultants and other program physicians and psychologists are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether you are disabled.

20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Plaintiff contends the ALJ failed to consider the portion of Dr. Hurwitz's opinion that set forth the five "moderate" limitations he found (A.R. 187-88). While the ALJ did not describe Dr. Hurwitz's opinion in detail, he plainly considered it, noting that it was consistent with the evidence of record and included a finding that

7

Plaintiff does not meet or equal a Listing.  (A.R. 14, 17.)  The ALJ, however, did not explicitly discuss the portion of Dr. Hurwitz's opinion set forth at A.R. 187-88, on which Plaintiff relies.  Nonetheless, no error warranting reversal occurred.

Plaintiff's argument selectively focuses on only a portion of Dr. Hurwitz's opinion, while failing to account for his ultimate opinion. Plaintiff relies exclusively on the check-the-box findings of Dr. Hurwitz set forth at A.R. 187-88, and ignores Dr. Hurwitz's narrative mental RFC findings, which not only are consistent with both Dr. Bolter's opinion and the RFC finding made by the ALJ but, if anything, are less restrictive than the limitations found by Dr. Bolter and adopted by the ALJ.  (*Compare* A.R. 14, 206, and 328.)  Dr. Hurwitz found that Plaintiff has sufficient retained understanding and memory, and adequate pace and persistence, to perform simple, repetitive work tasks for a normal workday and work week, should not work with the public but can relate in a socially effective manner with supervisors and co-workers, and is adaptable to a variety of work settings and changes. (A.R. 206.)  The limitations found by Dr. Bolter are somewhat more restrictive (*i.e.,* that Plaintiff should have "minimal contact with peers and supervisors," should be limited to one to two step tasks, and no finding that Plaintiff is adaptable), and the ALJ adopted them. (A.R. 14, 17, 328.)

The ALJ is responsible for resolving conflicts in the medical evidence.  <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956 (9th Cir. 2002); <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  To the

1   extent there was any conflict between the opinions of Dr. Hurwitz and
2   Dr. Bolter regarding Plaintiff's limitations, the ALJ resolved this
3   conflict by adopting the findings of Dr. Bolter.  As the ALJ noted, Dr.
4   Bolter is a board certified psychiatrist and neurologist who testified
5   about his review of the medical evidence and Plaintiff's testimony,
6   explained the bases for his findings, and based his conclusions on
7   clinical findings.  (A.R. 15, 17.)  There was no error in the ALJ's
8   conclusion that Dr. Bolter's opinion was entitled to greater weight than
9   that of Dr. Hurwitz, also a board certified psychiatrist but not a
10  neurologist, who simply completed a check-the-box form, failed to
11  explain the bases for his conclusions as required, and did not clearly
12  identify which medical evidence he had reviewed.  *See* Crane v. Shalala,
13  76 F.3d 251, 253 (9th Cir. 1996)(the ALJ permissibly rejected three
14  psychological evaluations of the claimant that "were check-off reports
15  that did not contain any explanation of the bases of their
16  conclusions"); Andrews, 53 F.3d at 1042 (ALJ properly relied on opinion
17  of testifying medical expert, who was a specialist in one of the areas
18  of claimed impairment and was subject to cross-examination at the
19  hearing, over that of treating physician, who was not a specialist and
20  whose opinion was defective); Matney v. Sullivan, 981 F.2d 1016, 1019
21  (9th Cir. 1992)(ALJ need not accept an opinion that is conclusory,
22  brief, and unsupported by clinical findings).

23

24      Contrary to Plaintiff's assertion, the ALJ was not required to
25  state "specific and legitimate reasons"[1] for favoring Dr. Bolter's

26  _____

27      [1]   Plaintiff mistakenly relies on case law involving the
    deference owed to the opinions of *examining* physicians. (Joint Stip. at
28  4.)  Dr. Hurwitz, like Dr. Bolter, did not examine Plaintiff.

opinion over Dr. Hurwitz's opinion.  To the extent Plaintiff contends that the RFC found by the ALJ, based on Dr. Bolter's opinion, is inconsistent with and/or more expansive than the "moderate" limitations set forth by Dr. Hurwitz at A.R. 187-88, Plaintiff does not explain how this is so, much less explain how any such purported inconsistency can be reconciled with Dr. Hurwitz's narrative mental RFC assessment set forth at A.R. 205, which plainly comports with the ALJ's RFC finding. If, as Plaintiff apparently contends, Dr. Hurwitz's "moderate" limitations somehow require finding a more limited RFC, then the state agency physician's opinion is internally inconsistent, and the ALJ was entitled to favor Dr. Bolter's opinion for that reason.  *See, e.g.,* Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001)(ALJ properly rejected treating physician's finding of disability, when that finding was inconsistent with the physician's other findings); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)(same).

For these reasons, the Court does not find any reversible error in the ALJ's treatment of Dr. Hurwitz's opinion.

**II.  The Hypothetical Posed To The Vocational Expert Was Appropriate.**

At the hearing, the ALJ posed the following hypothetical question to the vocational expert ("VE"):

Assume that we have a younger individual as defined in the regulations with an eleventh grade education, prior work experience which you indicated ranged from light to medium as

10

performed and unskilled.    If there were no physical limitations, but there were limitations to simple repetitive tasks, no public contact and minimal interaction with coworkers and supervisors, would any of the prior work activity be available and, if not, would there be other work activity that exists either nationally or locally that could be performed?

(A.R. 331.) In response, the vocational expert stated, "I think that the past work is performable and relative to the dealing with the supervisors and the coworkers, both would be in the environment of but would not be contingent on being able to complete the job tasks." (*Id.*) The ALJ then asked, "Okay and all these positions assume capability of sustaining 40 hours of work activity?" The vocational expert responded, "That's correct." (*Id.*)

Plaintiff contends that this hypothetical to the VE was erroneous, because it failed to incorporate the five "moderate" limitations, discussed in Section I, set forth in Dr. Hurwitz's mental residual functional capacity assessment form.  A hypothetical posed to a VE must be "accurate, detailed, [and] supported by the record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999)  If the hypothetical to the VE does not reflect all the claimant's limitations and/or is not supported by the evidence of record, the VE's testimony has no evidentiary value. Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993); Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir. 1988); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

The above-quoted hypothetical question posed to the VE accurately set forth Plaintiff's mental RFC. (A.R. 14.) As discussed in Section I, that RFC finding made by the ALJ was fully consistent with Dr. Hurwitz's narrative mental RFC assessment. (A.R. 206.) Indeed, Dr. Hurwitz expressly opined that Plaintiff can perform simple repetitive tasks, in a nonpublic setting and "in a socially effective manner with coworkers and supervisors," "for a normal workday and workweek." (*Id.*) The ALJ expressly confirmed with the VE that the positions she found to be "performable" encompassed "40 hours of work activity," *i.e.,* the "normal . . . workweek" that Dr. Hurwitz opined Plaintiff was capable of working. (A.R. 206, 331.) The ALJ also provided greater limitations in his hypothetical to the VE than those to which Dr. Hurwitz opined, namely, the ALJ omitted from the hypothetical Dr. Hurwitz's finding that Plaintiff can "adapt to a variety of work settings and changes," and the ALJ stated that the worker could have only "minimal interaction with coworkers and supervisors," rather than the less limited finding by Dr. Hurwitz that Plaintiff "can relate in a socially effective manner with coworkers and supervisors." (*Id.*)

Moreover, the limitations set forth in the hypothetical to the VE reflected the "practical ramifications" that flow from the various moderate limitations found by Dr. Hurwitz (A.R. 187-88), just as Dr. Hurwitz explained in narrative form in his mental RFC assessment (A.R. 206). *See* <u>Roe v. Chater</u>, 92 F.3d 672, 676-77 (8th Cir. 1996)(while hypothetical to VE did not use the specific wording of the "concentration, persistence, or pace" limitation the ALJ had found, the hypothetical's wording did encompass the "concrete consequences" and "practical ramifications" of this limitation, and thus, the hypothetical

sufficiently presented the claimant's limitations to the VE).   The hypothetical's limitation to "simple, repetitive tasks" necessarily encompassed Dr. Hurwitz's findings of moderate limitations in Plaintiff's abilities to carry out detailed instructions, maintain attention and concentration for extended periods, and make simple work-related decisions, just as Dr. Hurwitz's narrative mental RFC assessment similarly concluded that these three pace and persistence limitations did not preclude Plaintiff from performing simple, repetitive work tasks (A.R. 206).   The hypothetical's limitation of "no public contact" similarly reflected the single moderate social interaction limitation found by Dr. Hurwitz, namely, with respect to Plaintiff's ability to interact appropriately with the general public.   While the hypothetical did not explicitly and separately note the fifth moderate limitation found by Dr. Hurwitz -- namely, as to Plaintiff's ability to set realistic goals or make plans independently of others -- the limitation to simple, repetitive tasks would seem to reflect the "practical ramification" of this limitation, just like Dr. Hurwitz's narrative mental RFC assessment, which also does not separately mention this fifth limitation.

Again, to the extent Plaintiff contends that Dr. Hurwitz's check-the-box "moderate" limitations somehow exceed those set forth in Dr. Hurwitz's narrative mental RFC assessment, which was reflected in the hypothetical question posed to the VE, the ALJ properly resolved any such conflict in the medical evidence in favor of a mental RFC assessment that was consistent with Dr. Hurwitz's narrative assessment and the conclusions of Dr. Bolter, the medical expert.   The ALJ was not required to include within the hypothetical *additional* limitations that

13

the ALJ had not found to be supported by the record.  <u>Matthews</u>, 10 F.3d at 681 (no error in omitting limitation from hypothetical when the ALJ had found it to be inapplicable).

For these reasons, the Court finds no reversible error based on the hypothetical to the VE.

### III. **Plaintiff's Contention That His RFC Is Inconsistent With The Jobs Found By The ALJ Fails.**

As his fourth issue, Plaintiff argues that the Level 2 reasoning level applicable to the three former jobs the ALJ found Plaintiff capable of performing - welder helper, palletizer, and mixer[2] -- is inconsistent with the RFC found by the ALJ.  Plaintiff contends that the "moderate" limitations found by Dr. Hurwitz are inconsistent with a Level 2 reasoning ability, and thus, the ALJ's finding that Plaintiff's RFC allows him to perform these former jobs was error.

To the extent that Plaintiff's fourth issue, like his first and third issues, is based on the proposition that Dr. Hurwitz's "moderate"

---

[2]    As set forth in the Dictionary of Occupational Titles ("DOT"), these three positions do, as Plaintiff asserts, entail a Level 2 reasoning level.  *See*:  DICOT 819.687-014, 1991 WL 681631 (welder helper); DICOT 929.687-054, 1991 WL 688180, and DICOT 920.685-078, 1991 WL 687492 (palletizer); and DICOT 510.685-018, 1991 WL 673719, and DICOT 570.685-010, 1991 WL 683924 (mixer); *see also* A.R. 332 (VE identifying the DOT numbers for the jobs found).

    The DOT states that Level 2 reasoning requires the ability to: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instruction"; and "Deal with problems involving a few concrete variables in or from standardized situations."  U.S. Dept of Labor, DICTIONARY OF OCCUPATIONAL TITLES, 1011 (4TH Ed. 1991).

14

limitations are more stringent than the mental RFC found by the ALJ and are controlling for purposes of the commissioner's Step Four analysis, this fourth argument also fails.  As the ALJ did not err in reconciling the medical evidence and rendered a mental RFC finding that is fully consistent with Dr. Hurwitz's narrative mental RFC assessment and Dr. Bolter's medical expert opinion, the only relevant question for purposes of the fourth issue is whether the Level 2 reasoning called for by the three jobs in issue is inconsistent with the mental RFC determined by the ALJ.   Under the trend of recent case law, the answer to that question is "no."

Numerous courts in this District and elsewhere have rejected the argument made by Plaintiff here, *to wit*, that a limitation to simple, repetitive tasks is inconsistent with Level 2 reasoning ability and is consistent, at most, with Level 1 reasoning.  *See* Hackett v. Barnhart, 395 F.3d 1168, 1176 (10th Cir. 2005)(finding Level 2 reasoning to be consistent with a limitation to simple, routine work tasks); Meissl v. Barnhart, 403 F. Supp. 2d 981, 984-85, (C.D. Cal. 2005)(finding that a limitation to simple, repetitive tasks was consistent with Level 2 reasoning ability); Flaherty v. Halter, 182 F. Supp. 2d 824, 850 (182 F. Supp. 2d 824, 850 (D. Minn. 2001)(finding that the Level 2 reasoning requirement of the job in issue was consistent with a limitation to simple, routine, repetitive, concrete, tangible tasks); *see also* Tudino v. Barnhart, 2008 WL 4161443, *11 (S.D. Cal. Sept. 5, 2008)("Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks."); Isaac v. Astrue, 2008 WL 2875879, *3-*4 (E.D. Cal. July 24, 2008)(following Meissl and finding that a limitation to simple job instructions is consistent with Level

2); <u>Charles v. Astrue</u>, 2008 WL 4003651, *4-*5 (W.D. La. Aug. 7, 2008)(limitation to simple, repetitive tasks is consistent with Level 2 reasoning); <u>Squier v. Astrue</u>, 2008 WL 2537129, *5 (C.D. Cal. June 24, 2008)("Plaintiff's limitation to simple, repetitive tasks is not inconsistent with the ability to perform jobs with a reasoning level of two."); <u>Riggs v. Astrue</u>, 2008 WL 1927337, *15-*20 (W.D. Wash. April 25, 2008)(finding a limitation to understanding, remembering, and carrying out simple instructions and to making simple decisions to be consistent with the Level 2 reasoning requirement of the jobs found at Step Five); <u>Jones v. Astrue</u>, 2007 WL 5397018, *6-*7 (E.D. Pa. Oct. 15, 2007)(finding no apparent inconsistency between a limitation to simple, repetitive tasks and Level 2 reasoning ability).

          As observed in <u>Meissl</u>, when there is a finding that a claimant can perform simple tasks with "some element of repetitiveness to them," Level 1 "on the DOT scale requires slightly less than this level of reasoning," and while Level 2 references an ability to follow "detailed" instructions, it qualifies and "downplay[s] the rigorousness of those instructions by labeling them as 'uninvolved.'" <u>Meissl</u>, 403 F. Supp. 2d at 984; *see also* <u>Charles</u>, 2008 WL 4003651, *5 (because of Level 2's use of the term "uninvolved" in conjunction with "detailed," Level 2 "is consistent with a RFC to perform simple, routine, repetitive work tasks"); <u>Squier</u>, 2008 WL 2537129, *5 (observing that while Level 2 uses the term "detailed instructions," "it specifically caveats that the instructions would be uninvolved -- that is, not a high level of reasoning"). Hence, the DOT's use of the term "detailed" in describing this reasoning level does not render it inconsistent with a limitation to simple, repetitive tasks.

Plaintiff has not pointed to any inconsistency between the Level 2 reasoning level requirement of the three prior jobs he performed and the conclusion that he is limited to simple, repetitive tasks.  The weight of prevailing authority precludes finding any such inconsistency.  As there was no apparent inconsistency between the ALJ's mental RFC determination and the Level 2 reasoning ability required for the three jobs identified by the VE, there was no departure or deviation from the DOT that required an explanation by the ALJ or the VE, as Plaintiff contends.  Accordingly, the VE's testimony provided substantial evidence for the ALJ's Step Four finding, and no error occurred.

**IV.  <u>The ALJ' Error With Respect To The Observations Of Plaintiff's Sister Does Not Warrant Reversal</u>.**

By his second issue, Plaintiff contends that the ALJ erred by failing to acknowledge and discuss a "Function Report Adult Third Party" questionnaire (the "Questionnaire") submitted by Plaintiff's sister, Estarla Beltran, on August 6, 2004.  (A.R. 102-10.)  Defendant does not dispute that the ALJ's decision fails to mention the Questionnaire.

"Lay testimony as to a claimant's *symptoms* is competent evidence that an ALJ *must* take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); *see also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993).  An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir.

17

1984)), particularly where, as in <u>Vincent</u>, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence" (<u>Nguyen</u>, 100 F.3d at 1467; original emphasis).  When, however, a lay witness testifies about a claimant's *symptoms*, which may affect the claimant's ability to work, such testimony *is* competent evidence and, therefore, cannot be disregarded without comment.  *Id*.  When an ALJ fails to discuss competent lay testimony, a reviewing court cannot find harmless error "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."  <u>Stout</u>, 454 F.3d at 1056.

In the Questionnaire, Ms. Beltran states that Plaintiff sleeps frequently, because his medications make him drowsy, and gets fatigued easily.  (A.R. 102.)  When asked what Plaintiff was able to do prior to his illness that he cannot do now, she responded, "He seemed to have more energy to play at times.  He is considered 8 years behind his age and is primary [*sic*] handicapped."  (A.R. 103.)  Ms. Beltran opined that Plaintiff has sleep apnea.  (*Id*.)  She also stated that:  Plaintiff needs reminders to brush his teeth, shower, or take his medication; Plaintiff does not prepare meals because he does not know how and has a hard time following instructions; Plaintiff does a number of household chores but cannot "do the front yard," because he gets weak and dizzy and/or because he refuses to cut the grass; Plaintiff can handle money but does not pay bills or handle a checking or savings account, because he has a hard time memorizing numbers and filling out forms, and it makes him feel insecure; when Plaintiff plays basketball, he becomes weak, sweats, cannot catch his breath, and feels dizzy and sleepy;

18

Plaintiff does not like to go places where he has to socialize with others; Plaintiff argues with family members; Plaintiff's mental condition affects his ability to stand, walk, talk, remember, complete tasks, concentrate, understand, follow instructions, and get along with others; Plaintiff cannot walk for longer than 15 minutes before he has to rest; Plaintiff cannot follow instructions, because he has a hard time reading and learning; and Plaintiff has difficulty handling stress and changes in his routine.  (A.R. 104-09.)

Under the above-noted authorities, the ALJ erred by failing to acknowledge and discuss the Questionnaire in his decision.  However, the Court finds this error to be harmless.

The ALJ was entitled to disregard Ms. Beltran's diagnostic-type statements, *e.g.*, that Plaintiff is mentally eight years behind his chronological age, is "primary handicapped," has sleep apnea, etc. These are medical diagnoses, not lay observations about a claimant's symptoms, and do not constitute competent evidence that the ALJ was required to consider.  <u>Nguyen</u>, 100 F.3d at 1467.  Moreover, Plaintiff does not claim to be disabled based on such conditions, and there has been no Step Two finding of such impairments.  Hence, any failure by the ALJ to consider and/or note that he was disregarding such statements was harmless.  *See* <u>Ukolov v. Barnhart</u>, 420 F.3d 1002, 1006 n.6 (9th Cir. 2005)(in which the Ninth Circuit states that the failure of the ALJ to adequately address the testimony of lay witnesses about the symptoms of a claimed impairment properly found not severe at Step Two is of no moment).

The ALJ also was entitled to disregard Ms. Beltran's observations about Plaintiff's alleged physical impairments and symptoms, such as weakness, fatigue, drowsiness, dizziness, an inability to walk for more than 15 minutes, an impaired ability to walk and talk, etc.  Plaintiff does not contends that he is disabled based on any physical impairment or physical symptoms.  (A.R. 318, in which Plaintiff testifies that it is his "emotional problems: that keep him from working; *see also* A.R. 61, disability report listing "mental disorders" as the only disabling condition.)  Significantly, although Plaintiff testified at the hearing, he did not claim to have any of the physical impairments and symptoms stated by Ms. Beltran.  (A.R. 315-21.)  Indeed, Plaintiff specifically contradicted Ms. Beltran's assertions about the effects of his medications; he denied that he has any side effects from his medications and stated that they help him.  (A.R. 317-18.)  The ALJ made no Step Two finding of any physical impairment.  As a substantial portion of Ms. Beltran's statements relate to matters not in issue and not related to any determined impairment, they properly should, and would, have been disregarded.  <u>Ukolov</u>, 420 F.3d at 1006 n.6.

Ms. Beltran's statements about Plaintiff's problems with concentration and memory, difficulty in following instructions, feelings of insecurity, difficulty or discomfort when socializing with others, etc. are essentially cumulative of the medical testimony accepted by the ALJ and reflected in his RFC finding that Plaintiff is limited to simple, repetitive tasks with no public contact and minimal contact with supervisors and co-workers.  There is no reason to believe that, had the ALJ expressly acknowledged and discussed these statements, he would have reached a different RFC finding or found any additional impairment at

20

Step Two.[3]   Critically, Ms. Beltran's August 2004 statements were made approximately only one month after Plaintiff ceased his long-time use of methamphetamines, marijuana, and alcohol and over two months before Plaintiff began receiving psychiatric treatment and related medication. Plaintiff testified that the medication and psychiatric treatment he received following Ms. Beltran's statements had helped him.  (A.R. 317-18.)   Thus, the probative value of Ms. Beltran's statements is questionable.

Under these circumstances, the Court can confidently conclude that no reasonable ALJ considering this case would have reached a different conclusion had he or she expressly considered and addressed Ms. Beltran's statements set forth in the Questionnaire.  Accordingly, the ALJ's failure to address such statements was harmless, and does not warrant reversal.

**CONCLUSION**

For all of the foregoing reasons, the Court finds that neither reversal of the ALJ's decision nor remand is warranted.  Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration and dismissing this case with prejudice.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel

---

[3]   Plaintiff does not claim to have any additional impairments that should have been found severe at Step Two.

21

1  for Plaintiff and for Defendant.

2

3       **LET JUDGMENT BE ENTERED ACCORDINGLY.**

4

5  DATED: September 23, 2008

6                                              /s/
                                       MARGARET A. NAGLE
7                              UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28